WEST et al. v. GALVESTON, H. & S. A. RY. CO. (No. 7384.)

(Court of Civil Appeals of Texas. Galveston. May 29, 1917. Rehearing Denied June 14, 1917.)

NAVIGABLE WATERS ⟨≋⟩20(8)—DRAWBRIDGES —OBSTRUCTION OF NAVIGATION—UNUSUAL PERIL.

A railway company's refusal to permit a vessel to pass through its drawbridge during the great Galveston storm of 1915, where the railroad was being constantly used to transport fleeing citizens, and where the operation of the drawbridge would have imperiled its use and that of the railway tracks, did not violate Rev. St. art. 6485, prohibiting the railroad company from impairing the usefulness of a navigable stream by operation of a drawbridge, and Rivers and Harbors Act Aug. 18, 1894, c. 299, § 5, 28 Stat. 362 (U. S. Comp. St. 1916, § 9973), requiring a railroad company operating a drawbridge across a navigable stream to open the same for the passage of vessels upon demand being made, since the conditions and perils caused by the storm were unusual.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 96.]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Suit by J. J. West and another against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Stewarts, of Galveston, for appellants. Baker, Botts, Parker & Garwood, of Houston, and W. T. Armstrong and Eugene A. Wilson, both of Galveston, for appellee.

LANE, J. This suit was brought by J. J. West and R. A. Frenzll, plaintiffs, against the Galveston, Harrisburg & San Antonio Railway Company, defendant, to recover the sum of $4,000 for damages to a certain boat, the property of plaintiffs, alleged to have been caused by reason of the unlawful and negligent acts of defendant, and for $1,500 additional for loss of the use of said boat.

Plaintiffs allege that the defendant railway company constructed a railway bridge over and across Dickinson bayou, a navigable stream, with a draw or swing bridge as a part thereof, which could be opened to permit the passage through said bridge of water crafts passing along said bayou; that all water craft, including those of the plaintiff, had the right to demand and receive of the defendant, its agents and servants, passage through said drawbridge for the purpose of navigating Dickinson bayou, subject only to a reasonable use by the defendant of said bridge in connection with the defendant's railroad tracks for the passage of trains thereover. They further allege that on the 16th day of August, 1915, during the great peril of an approaching storm, those in charge and control of plaintiff's boat undertook to run said boat up Dickinson bayou for protection against the approaching storm; that when they reached said bridge

they made frequent demands upon defendant's servants who were in charge of said draw or swing bridge to open same so said boat could pass up said bayou; but that said servants failed and refused to open said drawbridge so that plaintiffs' boat could pass up said bayou; and that by reason of such failure and refusal plaintiffs' boat was driven against said bridge by the wind and waves and damaged in the sum of $4,000. They allege that such failure and refusal to open said bridge was unlawful, willful, and unreasonable and malicious. They also allege special damages in the sum of $1,500 for the loss of the use of said boat.

Defendant answered by general denial, and special plea as follows:

"Answering further herein, this defendant shows to the court: That, by reason of the severity of the great storm then raging, it was impossible at the time alleged to open the draw or swing of the bridge alleged by plaintiffs without endangering the life or lives of any person or persons who might have then attempted to open the same to permit plaintiffs' alleged boat to pass. That had the efforts of any employé or employés of this defendant been put forth at such risk of their lives, and had they succeeded in opening said draw or swing bridge, it would have been impossible by reason of the said great and dangerous storm to successfully close the same in order to permit the passage of trains of this defendant, for whose passage the said bridge was constructed across the alleged Dickinson bayou, a navigable water of the United States; and that this defendant, being a common or public carrier of passengers, had passenger trains due to pass over the said bridge on the said 16th day of August, 1915, and which it expected to move over said bridge at divers times during said day at about the time and after the time plaintiffs' said boat sought passage through said bridge. That some of its trains were expected to carry and did carry large numbers of persons from the city of Galveston, many of whom were demanding transportation from said city, seeking refuge from the mighty storm then raging, and whose severity was plainly growing more dangerous hour by hour. That, as was plainly evident, defendant could not have opened, or attempted to open, the draw of said bridge at the time passage through same was sought by the alleged boat of the plaintiffs without gravely imperiling the safe transportation of the passengers upon its aforesaid trains and thereby committing a gross and inexcusable breach of its legal obligation to safely transport the aforesaid passengers with the utmost care. That the necessity for the use of said bridge by the public who used the passenger trains of this defendant was, at said time, a great public necessity, and the need in such time of keeping open its line of railroad, of which said bridge was a part, between Galveston Island and the outside world, in order to maintain in the stress of that dangerous period proper transportation for supplies and for people, was likewise a matter of great public necessity. That all the matters and things therein alleged, and each of them, imposed upon this defendant the imperative duty of using every human effort to preserve said bridge intact and safe for so long a period as such effort could avail therefor, and these public necessities, and each of them, were paramount in importance to any right claimed by the plaintiffs to seek passage through said draw or swing of said bridge at a time when such pressing and imperative rights of the public aforesaid would have been greatly endangered by the opening of the said draw for the accommodation of the said plaintiffs. That any

action by defendant or its servants in maintaining the safety of said bridge, and protecting against the obvious great danger, and the practical certainty of destroying the use of its said line of railroad by opening said draw or swing of said bridge at said time, was a reasonable and necessary use of the said bridge for the safe passage of its passenger, mail, freight, and supply trains thereon, and for the use of the public."

The case was tried with a jury, and, upon their verdict in favor of defendant, judgment was accordingly rendered.

Appellants' contention for a reversal, in effect, is: First, that from the evidence it is apparent that those in charge of said bridge could have opened the draw so as to let said boat pass; and, second, that if it be conceded that the drawbridge could not have been opened, so as to let said boat pass, without great danger to the lives of those in charge of the same and to passenger trains of defendant, still, under the law, defendant would be guilty of negligence for which it would be liable to plaintiffs for their damages. They contend that by article 6485, Revised Civil Statutes of this state, and section 5 of the Rivers and Harbors Act (Act Aug. 18, 1894, c. 299, 28 Stat. 362 [U. S. Comp. St. 1916, § 9973]), it is made the imperative duty of defendant to keep said navigable waterway not unnecessarily impaired, and therefore no incident of any nature whatsoever would absolve it from its duty to open said drawbridge, to let water crafts pass, upon demand being made upon it so to do; that if in fact it were impossible for defendant to open said bridge by reason of said storm, or that if in fact those in charge of said bridge reasonably believed that an attempt to open the bridge would imperil their lives and the lives of passengers on defendant's trains, and for these reasons failed or refused to open the bridge, still defendant would be liable to plaintiffs for their damages.

By article 6485, supra, it is provided:

A railroad "corporation shall have the right to construct its road across, along, or upon any stream of water, water course, street, highway, plank road, turnpike, or canal which the route of said railway shall intersect or touch; but such corporation shall restore the stream, water course, street, highway, plank road, turnpike, or canal thus intersected or touched to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair."

Section 5 of the Rivers and Harbors Act is as follows:

"That it shall be the duty of all persons owning, operating, and tending the drawbridges now built, or which may hereafter be built across the navigable rivers and other waters of the United States, to open, or cause to be opened, the draws of such bridges under such rules and regulations as in the opinion of the Secretary of War the public interests require to govern the opening of drawbridges for the passage of vessels and other water crafts, and such rules and regulations, when so made and published, shall have the force of law. Every such person who shall willfully fail or refuse to open, or cause to be opened, the draw of any such bridge for the passage of a boat or boats, or who shall

unreasonably delay the opening of said draw after reasonable signal shall have been given, as provided in such regulations, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than two thousand dollars nor less than one thousand dollars, or by imprisonment (in the case of a natural person) for not exceeding one year, or by both such fine and imprisonment, in the discretion of the court."

The court, after further instructing the jury as to the substance of the pleadings of both parties, further instructed the jury as follows:

"You are instructed that it was the duty of the defendant company to open the draw to allow the Eva (boat) to pass through unless the doing so would, under the circumstances, have endangered the lives of those undertaking to operate it, or have endangered the operation of its trains, or have created a reasonable apprehension thereof, on account of the storm prevailing at the time, if any.

"If you believe from the evidence that the defendant's agents and servants failed or refused to open the draw to allow the Eva (boat) to pass through when duly signaled, though the same might have been done without endangering the lives of those operating the draw or the maintenance of defendant's line of railway for the safe passage of trains, or without reasonable apprehension thereof, and that in consequence thereof in the natural course of events, from conditions then existing and known to such agents and servants, the vessel was damaged and wrecked, then the plaintiffs are entitled to recover. But if the attempt to open the draw at the time would have endangered the safety of those undertaking to operate it, or the maintenance of defendant's line of railway for the safe passage of trains, or created a reasonable apprehension thereof, then the defendant is entitled to your verdict. * * *

"You are the exclusive judges of the facts proven, the weight of the evidence, and the credibility of the witnesses; but you must receive the law from the court which is here given you.

"The burden of proof is on the plaintiff to show by a preponderance of the evidence the facts entitling them to recover, but in determining such facts you will take into consideration all the facts and circumstances in evidence relating thereto."

We cannot sustain the contention of appellant: First, because the undisputed evidence shows that at the time the demand for the opening of the bridge was made an unusual storm was prevailing, and there was sufficient evidence to support a finding by the jury that it was impossible to open the bridge at that time because of the storm, and to also support a finding that an attempt on the part of those in charge of the bridge to open the draw therein, under prevailing conditions, would have imperiled the lives of those making such attempt as well as the lives of passengers on the trains of defendant, who were fleeing from Galveston to avoid the dangers of the great storm of 1915; and, second, we cannot agree with the contention of appellants that damages suffered by them are recoverable from appellee regardless of its inability to open the draw in its bridge,

and regardless of its refusal to so open the same when it reasonably appeared to those in charge thereof that to do so would cause the death of those attempting to open said draw, and regardless of the danger to the passenger trains of appellee in the event said draw was opened. We think counsel for appellants misconstrues the provision of the law above quoted. We have carefully reviewed the authorities cited by appellants and have concluded that none of them has any application to the case made by the pleadings and evidence now before us. We have also reached the conclusion that the charge of the court fully and fairly submitted the case to the jury as made by the pleadings of both parties and the evidence adduced thereunder.

The right of the defendant to temporarily refuse to open the draw in its bridge under the prevailing conditions at the time, we think, cannot be reasonably questioned.

In the case of I. & G. N. Ry. Co. v. Bergman, 64 S. W. at page 1001, it is said:

"The storm in question was of such unprecedented fury, resulted in the destruction of such a vast amount of property and in such an appalling loss of human life, that it attracted the attention of the entire civilized world. The court may therefore assume judicial knowledge of the fact that it occurred, as well as its nature and extent. This being true, we may safely proceed upon the assumption that, when the people of Galveston awoke to a realization of their danger, they gave small thought to the danger threatening senseless chattels, and turned their attention to saving their own and other human lives. In such a situation, it will be scarcely contended but that the most prudent man would have busied himself with looking to the welfare of his family and friends, and in deference to such paramount duty he would have postponed the safety of his most precious chattel. The defendant, though a corporation, must have exercised the care demanded through human agencies. Its officers, clerks, and draymen were human beings, and all alike subject to the impending calamity. Thus the facts and the nature of the disaster furnish, not only a further reason why we should hold the defendant acquitted of blame, unless the plaintiff shall make it affirmatively appear that there was negligence after the danger was discovered, but excludes the idea that such negligence could be shown."

In the case of Railroad Co. v. Fries, 87 Pa. 234, it is said:

"Had they turned their entire attention to plaintiff's property, neglected all other duties, and left helpless women and children to their fate, it is just possible they might have succeeded in getting the three cars off the siding. They were not obliged, however, to sacrifice every feeling of humanity to the preservation of plaintiff's property; and, had they done so, the evidence does not show that it would have been successful."

What has been said disposes of all of appellants' assignments, and, as we find no error committed in the trial of the cause in the trial court, the judgment there rendered is affirmed.

Affirmed.